UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-CV-60268-RUIZ/STRAUSS

STANISLAV ZALEZHNEV,

    Plaintiff,

v.

WONDERWORLD MONTESSORI
ACADEMY CORPORATION,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

THIS MATTER came before the Court upon Defendant's Verified Motion for Attorneys' Fees [DE 77] ("Motion"). The Motion was referred to me to take all necessary and proper action as required by law [DE 78]. I have reviewed the Motion, the briefing related to the Motion [DE 80, 87, 91], the Order Granting Defendant's Motion for Summary Judgment ("MSJ Order") [DE 65],[1] the summary judgment briefing [DE 52, 55, 62], the other summary judgment materials, the Eleventh Circuit's Opinion ("Opinion") [DE 90] affirming the MSJ Order,[2] and all other pertinent portions of the record. For the reasons discussed herein, I respectfully **RECOMMEND** that the Motion [DE 77] be **GRANTED IN PART and DENIED IN PART** and that the Court award Defendant attorneys' fees in the amount of **$23,546.10**.

---

[1] *See Zalezhnev v. Wonderworld Montessori Acad. Corp.*, No. 19-CIV-60268-RAR, 2019 WL 7633182 (S.D. Fla. Dec. 23, 2019), *aff'd*, No. 20-10277, 2021 WL 4553019 (11th Cir. Oct. 5, 2021).

[2] *See Zalezhnev v. Wonderworld Montessori Acad. Corp.*, No. 20-10277, 2021 WL 4553019 (11th Cir. Oct. 5, 2021).

## BACKGROUND[3]

Plaintiff was employed by Defendant for three months as a maintenance and security guard. According to Defendant's employee handbook, the physical requirements for the "Security" position included "physical exertion to manually move, lift, carry, pull, or push heavy objects or materials," and "stooping, kneeling, crawling, bending, turning, and reaching." The "Maintenance" position required operating equipment and machinery as necessary and maintaining the school property. In these positions, Plaintiff used a leaf blower, picked up tree debris and garbage, shampooed carpets with heavy equipment, cleaned animal cages, ran errands, and assisted parents and children at arrival and dismissal by operating non-motorized school gates that required pushing and pulling.

In this case, Plaintiff alleged that on multiple occasions he told Camilla Rovshan ("C. Rovshan"), Defendant's President and Owner, that he suffered from a physical condition that "impair[ed] his ability to walk, push, pull, bend and lift heavy objects." In 2014, Plaintiff underwent surgery to address his cervical cord compression and myelopathy. His condition derives from the "fusion of his neck (cervical) bones," which causes him to suffer from numbness in one of his legs. As a result of this condition, Plaintiff alleges he had difficulty using the leaf blower, operating the large carpet cleaner, lifting heavy items, and pushing and pulling the non-motorized school gates. According to Plaintiff, he offered to provide C. Rovshan medical documents from his surgery, but she refused to review the documents.

Plaintiff further asserts that after he informed C. Rovshan of his physical impairments, C. Rovshan threatened to cut his hours and ridiculed him by asking him "what good are you for?"

---

[3] The factual background included herein is taken from the MSJ Order and the Opinion. Of course, the facts were viewed in the light most favorable to Plaintiff as the non-moving party. *See* MSJ Order at 1 n.1.

2

Similarly, on one occasion, Plaintiff told C. Rovshan that his back hurt while cleaning the exterior trash, and C. Rovshan threatened to fire him, but she did not do so at that time. On January 12, 2018, Plaintiff told C. Rovshan he had a doctor's appointment after work to obtain a physical. Subsequently, an argument ensued between the parties and Plaintiff was fired.

This case followed. On January 30, 2019, Plaintiff filed his Complaint [DE 1], alleging the following three claims under the Americans with Disabilities Act ("ADA"): (I) discrimination (premised upon a failure to accommodate); (II) harassment; and (III) retaliation. On December 23, 2019, the Court entered the MSJ Order [DE 65], granting Defendant summary judgment on all counts, as well as the Final Judgment [DE 66] in Defendant's favor. More recently, the Eleventh Circuit issued the Opinion, affirming this Court. Therefore, Defendant is clearly the prevailing party.

In the MSJ Order, the Court first addressed Plaintiff's discrimination claim. The Court explained that "[t]o establish a *prima facie* case of discrimination under the ADA, a plaintiff must show that: (1) he is disabled; (2) he was a qualified individual at the relevant time; and (3) he was discriminated against because of his disability." 2019 WL 7633182, at *2 (citation omitted). In addressing whether Plaintiff is disabled, the Court noted the three ways to establish that one is disabled under the ADA: "(a) [having] a physical or mental impairment that substantially limits one or more major life activities of an individual; (b) a record of such an impairment; or (c) being regarded as having such an impairment." *Id.* (citing 42 U.S.C. § 12102(1)). Plaintiff argued that (a) and (c) were satisfied. *See id.* With respect to (a), the Court rejected Plaintiff's argument, finding that although he demonstrated an impairment, there was "no record evidence" linking Plaintiff's impairment to his alleged limitations on major life activities (aside from his own *conclusory* statements). *Id.* at *3. The Court also noted that Plaintiff's summary judgment

affidavit failed to "shed light on the nature of his impairment, or more importantly, the extent to which his impairment impacts his major life activities." *Id.* As to (c), Plaintiff likewise failed to provide any actual evidence other than his own conclusory statements to support his contention that Defendant regarded him as being disabled. *Id.* at *4.

Although the Court found that Plaintiff's failure to establish a disability was fatal to his discrimination claim, it nevertheless proceeded to address whether he was a qualified individual. *Id.* The Court found that no reasonable jury could conclude that Plaintiff was a qualified individual and that his discrimination claim, therefore, "doubly fails." *Id.* The Court then explained that, "under well-established Eleventh Circuit law," Plaintiff's failure-to-accommodate claims were "without merit." *Id.* at *5. Thus, Plaintiff failed to establish a *prima facie* case for multiple reasons. *See id.* at *2-6 & n.4.

Next, the Court quickly rejected Plaintiff's harassment and retaliation claims as well, finding that they were duplicative of his discrimination claim. *See id.* at *6-7. Although the Court quickly rejected the claims on this basis, it nevertheless also found that the claims failed for other reasons as well. *See id.* As with his discrimination claim, Plaintiff failed to establish a *prima facie* case with respect to his harassment and retaliation claims. *See id.*

The Eleventh Circuit's Opinion affirming this Court was unpublished, and no oral argument was held in the appeal. In its Opinion, the Eleventh Circuit first held, like this Court, that Plaintiff failed to establish a *prima facie* discrimination claim. 2021 WL 4553019, at *2. In evaluating whether Plaintiff demonstrated he was disabled, the Eleventh Circuit explained that:

> [Plaintiff] did not present any medical documentation of his cervical fusion; instead, [Defendant] submitted records from his hospitalization in 2014, which stated the procedure went well and his postoperative course was unremarkable. No other medical records were submitted. While [Plaintiff] asserted he was having difficulty performing physical tasks, his own deposition testimony undermined any restriction as he stated that he performed the duties of the position despite the pain

4

> and never refused to perform them. Consequently, there was a dearth of record evidence showing the severity of [Plaintiff's] impairment and that his fusion made him unable to perform an activity or significantly restricted his performance compared to an average person.

*Id.* The Eleventh Circuit also agreed with this Court that Plaintiff "provided no evidence beyond his own conclusory statements that he was 'regarded as' disabled." *Id.*

Additionally, the Eleventh Circuit agreed with this Court's determination that Plaintiff cannot show he is a qualified individual. *Id.* at *3. Moreover, the Eleventh Circuit also concluded that Plaintiff never made a reasonable accommodation request, noting that "[t]hroughout his filings, [Plaintiff] never identified any accommodation request made to [Defendant] that would have made him better able to perform his duties, much less an instance where he requested an accommodation." *Id.* The Eleventh Circuit further recognized,

> [Plaintiff] only references informing Rovshan of his pain, not that he requested help, assistance, or some other form of alteration to his job duties. Moreover, he testified during his deposition that he "didn't think that accommodations [were] available" and did not "see any opportunity for help." Without making a request, [Defendant] was not obligated to offer an accommodation or have an interactive process.

*Id.*

Finally, the Eleventh Circuit rejected Plaintiff's harassment and retaliation claims, stating that this Court "did not err in concluding the factual support for all three of [Plaintiff's] claims was identical, and thus his harassment and retaliation claims failed because he failed to establish he was disabled under the ADA." *Id.* Furthermore, like this Court, the Eleventh Circuit found that Plaintiff's harassment and retaliation claims failed for additional reasons as well and that Plaintiff failed to establish a *prima facie* case of harassment or retaliation. *Id.* at *4.

5

## ANALYSIS

**I.     ENTITLEMENT**

   **A. Legal Standard**

A prevailing defendant's request for attorneys' fees pursuant to the ADA's fee-shifting provision, 42 U.S.C. § 12205,[4] is evaluated under the same standard that applies to a prevailing defendant's fee request in the Title VII context. *See Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1176 (11th Cir. 2005); *Bruce v. City of Gainesville, Ga.*, 177 F.3d 949, 952 (11th Cir. 1999). Specifically, a prevailing defendant in an ADA case is only entitled to attorneys' fees if the court finds the plaintiff's claim to be "frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so."  *Cordoba*, 419 F.3d at 1176 (quoting *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422 (1978)). A finding of subjective bad faith, however, is not necessary. *Beach Blitz Co. v. City of Miami Beach, Fla.*, 13 F.4th 1289, 1297 (11th Cir. 2021). At any rate, "[t]he fact that a plaintiff may ultimately lose his case is not in itself a sufficient justification for the assessment of fees." *Id.* at 1302 (quoting *Hughes v. Rowe*, 449 U.S. 5, 14 (1980)).

Frivolity is determined on a case-by-case basis. *Id.* (citing *Sullivan v. Sch. Bd. of Pinellas Cnty.*, 773 F.2d 1182, 1190 (11th Cir. 1985)). In making a frivolity determination, courts focus

---

[4] *See* 42 U.S.C. § 12205 ("In any action . . . commenced pursuant to this chapter, the court . . . in its discretion, may allow the prevailing party . . . a reasonable attorney's fee, including litigation expenses, and costs . . . ."). In addition to seeking an award of fees under § 12205, the Motion includes a heading asserting that Defendant is also entitled to fees under 28 U.S.C. § 1927. [DE 77] at 4. However, the Motion makes no argument regarding entitlement under § 1927. Therefore, I do not address the issue. Also, Defendant includes a brief argument regarding costs at the end of the Motion. [DE 77] at 12-13. However, the Motion does not seek an award of any specific costs, and the wherefore clause of the Motion solely seeks an award of attorneys' fees (in the amount of $37,064.50). Accordingly, I only address the issue of fees under 42 U.S.C. § 12205. I also note that the Court previously awarded taxable costs to Defendant. *See* [DE 81, 83].

on "whether the case is so lacking in arguable merit as to be groundless or without foundation rather than whether the claim was ultimately successful." *Id.* (quoting *Jones v. Texas Tech Univ.*, 656 F.2d 1137, 1145 (5th Cir. 1981)). For decades, the Eleventh Circuit has considered at least three factors relevant to determining frivolity in this context: "(1) whether the plaintiff established a prima facie case; (2) whether the defendant offered to settle; and (3) whether the trial court dismissed the case prior to trial or had a full-blown trial on the merits." *Id.* (quoting *Sullivan*, 773 F.2d at 1189). Nonetheless, these factors are "general guidelines only, not hard and fast rules." *Id.* (quoting *Cordoba*, 419 F.3d at 1177). Moreover, the Eleventh Circuit has recently confirmed that a fourth "particularly important" consideration is "whether there was enough support for the claim to warrant close attention by the court." *Id.*

### B. Discussion

Having considered the factors identified by the Eleventh Circuit, as well as the facts and circumstances of this case (viewed in the light most favorable to Plaintiff), I find that Plaintiff's claims are frivolous. As to the relevant factors, at least three, and arguably all four, support a finding of frivolity. It is obvious that the first and third factors support an award of fees. Both this Court and the Eleventh Circuit found that Plaintiff failed to establish a *prima facie* case as to all three of his claims, and the case was disposed of at summary judgment. The second factor – whether Defendant offered to settle – is a bit less obvious. The briefing indicates that Defendant made a settlement offer. However, the briefing does not disclose the amount of the offer, and "the amount of the offer is a necessary factor in evaluating whether a settlement offer militates against a determination of frivolity." *Quintana v. Jenne*, 414 F.3d 1306, 1310 (11th Cir. 2005). "In the absence of evidence of an offer of a substantial amount in settlement, this factor does not support either party." *Id.* While there is no evidence of the amount of Defendant's offer, Plaintiff has

characterized it as a "low" offer, [DE 87] at 14, a characterization that arguably weighs against Plaintiff.  *See Hamilton v. Sheridan Healthcorp, Inc.*, 700 F. App'x 883, 886 (11th Cir. 2017) (second factor supported frivolity finding where defendants only made nominal offer).  Thus, the second factor, while likely neutral (given the lack of information), could arguably weigh in Defendant's favor (but not Plaintiff's favor).

The fourth factor – sufficient support for Plaintiff's claims to warrant the Court's close attention – and the other facts and circumstances of this case also support a finding of frivolity. Both this Court's MSJ Order[5] and the Eleventh Circuit's Opinion fairly easily rejected Plaintiff's arguments.  Significantly, each one of Plaintiff's claims failed for several reasons.  In other words, Plaintiff did not merely fail to establish a *prima facie* case (as to each claim) for one reason.  He failed to establish several essential elements of his claims.  Notably, as this Court and the Eleventh Circuit recognized, Plaintiff offered nothing more than his own *conclusory* statements to support several important aspects of his case.  He had little to no evidence to establish significant parts of his claims.  Moreover, his own deposition testimony undermined his claims.

Plaintiff could not even establish a disability, a significant aspect of his claims.  Although Plaintiff attempts to attack the Court's MSJ Order on the issue of disability by arguing that the Court applied an outdated standard, he completely misses the mark.  While the Court did reference case law pre-dating the ADA Amendments Act of 2008 ("ADAAA"), and while "the term

---

[5] This Court granted summary judgment on all of Plaintiff's claims the first time it reviewed the merits, less than eleven months after the case was filed.  *Cf. Hamilton*, 700 F. App'x at 886 ("Dr. Hamilton also argues that this case was not frivolous because his claims merited careful attention and review. Again, we disagree. The district court granted summary judgment on all of Dr. Hamilton's claims nine months after the case was filed, at the first opportunity it had to consider the merits. The fact that the district court had to adjudicate a few discovery skirmishes along the way does not suggest that the case was meritorious. This was not a case that merited 'careful attention and review.'").

'substantially limits' shall be interpreted and applied to require a degree of functional limitation that is lower than the standard for 'substantially limits' applied prior to the ADAAA," 29 C.F.R. § 1630.2(j)(1)(iv), it was not the pre-ADAAA standard that drove the Court's determination. Rather, the real problem for Plaintiff (among other problems) was that "*no record evidence* link[ed] Plaintiff's impairment to his alleged limitations on major life activities, and Plaintiff's *conclusory* allegations [were] insufficient . . . ." 2019 WL 7633182, at *3 (emphasis added). Additionally, as the Eleventh Circuit noted, Plaintiff's own deposition testimony undermined his disability contention. 2021 WL 4553019, at *2.

Moreover, I find it significant that Plaintiff failed to identify or request an accommodation when the basis for his discrimination claim was a failure to accommodate. Again, as this Court stated in the MSJ Order, "under *well-established Eleventh Circuit law*, Plaintiff's claims are *without merit*." 2019 WL 7633182, at *5 (emphasis added).[6] This Court explained, *inter alia*,

> Plaintiff has not met his burden of identifying *any* reasonable accommodation that would have permitted him to perform the essential functions of his job. Although Plaintiff's Opposition repeatedly notes that he requested "an accommodation" or "job alterations," not once does he actually identify the accommodations that would have suited him, or whether they were reasonable or even tenable.

---

[6] *Cf. Beach Blitz*, 13 F.4th at 1303 (determining that the fourth factor weighed in favor of finding frivolity and noting, in that context, that the "court was not required to grapple with a novel area of law" and that "Beach Blitz's procedural due process claims were dismissed based on long-established precedent"). It is also worth noting that the Eleventh Circuit did not set oral argument in Plaintiff's appeal (even though Plaintiff advocated for oral argument in his initial brief), the Eleventh Circuit's Opinion was an unpublished *per curiam* opinion, and no judge on the panel dissented. *Cf. PBT Real Est., LLC v. Town of Palm Beach*, No. 19-11264, 2021 WL 5157999, at *3 (11th Cir. Nov. 5, 2021) (finding that the case "warranted enough attention that on the prior appeal we requested oral argument and published our decision" and that "[t]hese two facts indicate[d] that PBT's claims warranted at least some review," but nevertheless affirming the district court's award of attorneys' fees); *Busby v. City of Orlando*, 931 F.2d 764, 787 (11th Cir. 1991) ("The fact that one judge on this panel disagrees over the disposition of the directed verdict against Walsh demonstrates that this court has had to consider Busby's claims against him very carefully.").

9

2019 WL 7633182, at *6. Moreover, as the Eleventh Circuit explained,

> Throughout his filings, [Plaintiff] never identified any accommodation request made to [Defendant] that would have made him better able to perform his duties, much less an instance where he requested an accommodation. Rather, [Plaintiff] only references informing Rovshan of his pain, not that he requested help, assistance, or some other form of alteration to his job duties. Moreover, he testified during his deposition that he "didn't think that accommodations [were] available" and did not "see any opportunity for help." Without making a request, [Defendant] was not obligated to offer an accommodation or have an interactive process.

2021 WL 4553019, at *3 (footnote and citations omitted). Once again, Plaintiff's own deposition testimony undermined his claim.

As to Plaintiff's harassment and retaliation claims, neither required any real degree of consideration. This Court and the Eleventh Circuit quickly and seamlessly concluded that they failed both because of Plaintiff's failure to establish that he was disabled and for additional reasons as well. Notably, in its brief discussion of the retaliation claim, the Eleventh Circuit once again recognized that Plaintiff's own deposition testimony undermined that claim (in addition to the other substantial infirmities). *See* 2021 WL 4553019, at *4 ("[T]he only adverse action substantiated by the record is [Plaintiff's] termination, and [Plaintiff] stated in his deposition that his termination was due to someone replacing him and not because of his disability or an accommodation request.").

Ultimately, at least three of the four relevant factors support a finding of frivolity, and the remaining factor does not weigh against such a finding. Moreover, consideration of the facts and circumstances as a whole support a finding of frivolity. Therefore, this Court should find that Defendant is entitled to an award of reasonable attorneys' fees against Plaintiff.[7]

---

[7] I do not take lightly the Supreme Court's warnings in *Christiansburg* about awarding fees to a prevailing defendant in a case such as this. *See Christiansburg*, 434 U.S. at 421-22 ("[I]t is important that a district court resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been

## II. REASONABLENESS

### A. Legal Standard

When determining the reasonableness of attorneys' fees, courts begin by multiplying a reasonable hourly rate by the number of hours reasonably expended. *Norman v. Housing Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). The result of that calculation is known as the lodestar, s*ee id.* at 1301-02, which is "strongly presumed to be reasonable." *Martinez v. Hernando Cnty. Sheriff's Office*, 579 F. App'x 710, 715 (11th Cir. 2014) (citations omitted).

The party seeking an award of fees has the burden of documenting the hours incurred and the applicable hourly rates. *Norman*, 836 F.2d at 1303 (citing *Hensley*, 461 U.S. at 437). Fee applicants are required to exercise billing judgment and to exclude entries that are excessive, redundant, or otherwise unnecessary. *Am. Civil Liberties Union v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999) (citing *Hensley*, 461 U.S. at 434). Entries for clerical or administrative tasks should also be excluded. *See Ortega v. Berryhill*, No. 16-24697-CIV, 2017 WL 6026701, at *2 (S.D. Fla. Dec. 5, 2017) ("Purely clerical or secretarial tasks that require no legal skill or training, such as converting pleadings to PDF, faxing and mailing, updating lists and calendars, and filing or e-filing documents, should not be billed at a paralegal rate regardless of who performs them." (citing *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 553 (7th Cir. 1999))).

It is axiomatic that hours that are unreasonable to bill to one's client are unreasonable to bill to an adversary, "*irrespective of the skill, reputation or experience of counsel*." *Barnes*, 168

---

unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success."). But even recognizing what the Supreme Court has cautioned, I find that fees should be awarded here for the reasons discussed above.

F.3d at 428 (quoting *Norman*, 836 F.2d at 1301). If fee applicants fail to exercise billing judgment, courts must do it for them. *Id.* A court "is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." *Norman*, 836 F.2d at 1303 (citations omitted).

Courts reviewing fee applications "need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011). Consequently, "[w]hen a district court finds the number of hours claimed is unreasonably high, the court has two choices: it may conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut." *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008) (citing *Loranger v. Stierheim*, 10 F.3d 776, 783 (11th Cir. 1994)).

### B. Reasonable Hourly Rate

Defendant requests that this Court find $420 to be a reasonable hourly rate for attorney Ronald Stern, $395 to be a reasonable hourly rate for attorney Ronnette Gleizer, and $125 to be a reasonable hourly rate for counsel's paralegal, Gemma Rovshan ("G. Rovshan"). For the reasons discussed herein, I agree that $420 is a reasonable hourly rate for Mr. Stern. However, Ms. Gleizer's rate should be reduced to $325, and G. Rovshan's rate should be reduced to $95 in light of Defendant's failure to provide information regarding her background and experience.

"A reasonable hourly rate is 'the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation.'" *Barnes*, 168 F.3d at 436 (quoting *Norman*, 836 F.2d at 1299). "The general rule is that the 'relevant market' for purposes of determining the reasonable hourly rate for an attorney's services is 'the place where

the case is filed.'" *Id.* at 437 (citing *Cullens v. Georgia Dep't. of Transp.,* 29 F.3d 1489, 1494 (11th Cir.1994)).

According to the Motion, Mr. Stern was admitted to the Florida Bar in 2005, and Ms. Gleizer was admitted to the Florida Bar in 2011. The Motion also states the Mr. Stern and Mr. Gleizer have handled hundreds of ADA cases. Although it would have been prudent to include additional facts regarding their background and experience, the Court is nonetheless aware of their experience in the ADA realm. Additionally, the Motion references several other cases in this district where counsel has been awarded fees.

Plaintiff opposes the hourly rates of both attorneys and their paralegal. In conjunction with Plaintiff's opposition to the Motion, Plaintiff's counsel has submitted an affidavit [DE 80-1] noting her own experience and customary hourly rate. Her affidavit states that she was admitted to the Florida Bar in 1999 and discloses some additional information about her background and experience. Counsel also states in the affidavit that her hourly rate in these types of matters is between $350 and $450 per hour, and she notes that she was awarded fees at a rate of $325 per hour in 2014 in a case where she obtained a substantial jury verdict. However, the affidavit does not disclose her rate in this matter. Additionally, although Plaintiff's response to the Motion contends that the requested hourly rates are unreasonable, Plaintiff does not indicate what would be reasonable. In arguing that the rates sought are unreasonable, Plaintiff contends, *inter alia*, that Defendant's counsel's primary experience is in a different area of the ADA, not in employment law cases like this case. Plaintiff also indicates that Mr. Stern's hourly rate of $420 has only been approved in default judgment cases.

Having considered the parties' arguments, the experience and qualifications of Defendant's counsel, and other case law in this district, including the cases cited in the briefing, and based on

13

my own knowledge regarding reasonable hourly rates in this community, I find that $420 is a reasonable hourly rate for Mr. Stern, $325 is a reasonable hourly rate for Ms. Gleizer, and $95 is a reasonable hourly rate for their paralegal. Significantly, I have previously found the same or substantially similar rates to be reasonable for Mr. Stern, Ms. Gleizer, and their paralegals in two cases where *contested* fee motions covering the same period of time were at issue. *See Caplan v. Rehabclinics (PTA) Inc.*, No. 19-CV-62890, 2020 WL 3977140, at *2-4 (S.D. Fla. July 13, 2020); *Barberi v. Gascom, Inc.*, No. 19-cv-62016, 2020 U.S. Dist. LEXIS 112702, at *5-8 (S.D. Fla. June 25, 2020). Like this case, both *Caplan* and *Barberi* involved time billed in 2019 and 2020. My rationale for each hourly rate in *Caplan* and *Barberi* applies with equal force here, notwithstanding that this case concerns a different area of the ADA.

### C. Hours Reasonably Expended

Defendant seeks to recover attorneys' fees for 94.1 hours of work. This is comprised of 86.5 hours of work performed by Ms. Gleizer, 6.6 hours of work performed by Mr. Stern, and 1 hour of work performed by G. Rovshan. I have carefully reviewed all of the time records submitted by Defendant's counsel [DE 77-2]. I have also carefully reviewed Plaintiff's objections to those entries, *see* [DE 80] at 18-20. Having done so, and having considered the parties' arguments, I find that a reduction is warranted, but not to the extent sought by Plaintiff.

First, Plaintiff appropriately contends that certain hours should be deducted for entries related to administrative or clerical work. [DE 80] at 18. The administrative time that must be deducted primarily relates to hours billed for the filing or service of court papers. Plaintiff appears to seek a reduction of slightly over three hours for administrative time. While I agree that a reduction of between two and three hours is appropriate on this basis, a reduction of greater than three hours would be excessive.

Second, Plaintiff asserts that certain "fees are unspecified and therefore unsubstantiated." [DE 80] at 18-19. Plaintiff's argument appears to be that counsel's entries for sending and reviewing emails should, but do not, contain sufficient descriptions regarding the purpose or content of the emails. That is because entries related to emails generally only state "email to opposing counsel" or "email from opposing counsel" (or similar characterizations). Notably, though, most emails have only been billed at 0.1 hours. It is often reasonable for emails billed at 0.1 hours – generally the lowest billing increment – to contain brief descriptions. However, on days where there are numerous emails with the same person, some additional description should be provided (absent situations where all of the emails with that person are being combined into a single entry for a total of 0.1 or 0.2 hours). Under the circumstances, a reduction of roughly two hours is appropriate.

Third, Plaintiff argues that fees related to certain tasks are unreasonable. [DE 80] at 19. The largest issue in this third category concerns time spent on work related to seeking to vacate the entry of default against Defendant. By way of background, Defendant filed a last-second motion for extension of time to respond to the Complaint at the beginning of this case. *See* [DE 9, 10]. The Court entered an Order denying Defendant's motion and directing the Clerk to enter default, stating in pertinent part, the following:

> Defendant filed the motion for extension of time at 10:30 P.M. the day its response was due, making it impossible for the Court to decide the motion before the deadline expired. Having filed the motion, Defendant then let the deadline pass without a response, perhaps assuming that its motion operated as a *de facto* stay of the deadline. The Court does not tolerate this sort of gamesmanship.

[DE 10]. In light of the foregoing, it would be unreasonable to award Defendant any fees for moving to vacate the entry of default or for preparing or reviewing related court papers (including

15

Plaintiff's motion for default judgment). A reduction of approximately nine hours is warranted.[8] Relatedly, Defendant should not be awarded the four and a half hours sought for preparing a motion to dismiss. That is because Defendant was not permitted to file the motion to dismiss in light of the above-described actions leading to the entry of default. *See* [DE 16] at 2 ("[T]he Court will not accept a motion to dismiss when Defendant allowed the deadline for that motion to pass.").

In the third category, Plaintiff also seeks a reduction where Defendant has billed 0.2 to review several brief orders (0.2 each). Having reviewed the identified orders, I find that 0.2 is excessive and that no more than 0.1 hours should have been billed for each entry. However, the remaining tasks/entries identified in the third category merit either little or no reduction beyond the reductions I have already made. In addition to the default/motion to dismiss hours discussed above (thirteen and a half), I find that the third category justifies a reduction of approximately two additional hours.

Finally, Plaintiff objects to a fourth category of time, arguing that hours billed for travel should be excluded. In doing so, Plaintiff references two entries of three hours each that apparently include travel time. One entry relates to mediation and the other entry appears to relate to a discovery hearing. Although it is difficult to fully evaluate the generalized arguments being made regarding these two entries and although Plaintiff does not indicate the amount of time he believes should be deducted for these entries, a reduction of two hours for these entries appears to be reasonable as the time billed does appear to be somewhat excessive based on the information provided. For instance, Plaintiff indicates mediation concluded in less than an hour, and Defendant did not file a reply to address this argument.

---

[8] A small amount of time related to this default issue has already been deducted in the administrative category. Therefore, I have not deducted such entries a second time. In the same vein, whenever any entry should be deducted for multiple reasons, I only deduct the entry once.

Based upon the foregoing, a reduction of roughly 21.5-22.5 hours is appropriate. Therefore, I recommend an across-the-board reduction of 24%, which I find to be reasonable. Applying such a reduction, Ms. Gleizer reasonably expended 65.74 hours, Mr. Stern reasonably expended 5.02 hours, and G. Rovshan reasonably expended 0.76 hours.

### D.  Lodestar

For the reasons discussed above, I find that the lodestar figure here is $23,546.10. This includes $21,365.50 for Ms. Gleizer's time (65.74 hours * $325), $2,108.40 for Mr. Stern's time (5.02 hours * $420), and $72.20 for G. Rovshan's time (0.76 hours * $95). I find the lodestar figure of $23,546.10 to be reasonable in this matter.

### CONCLUSION

For the reasons discussed above, I respectfully **RECOMMEND** that the District Court **GRANT IN PART and DENY IN PART** the Motion [DE 77] and award Defendant attorneys' fees in the amount of **$23,546.10**.

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Rodolfo A. Ruiz, II, United States District Judge. Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

**DONE AND SUBMITTED** in Fort Lauderdale, Florida this 17th day of December 2021.

Jared M. Strauss
United States Magistrate Judge